Thomas E. Loeser (SBN 202724)
**COTCHETT PITRE & McCARTHY LLP**
2716 Ocean Park Blvd.
Suite 3088
Santa Monica, CA 90405
Telephone: 310-392-2008
tloeser@cpmlegal.com

Norm Siegel (*pro hac vice forthcoming*)
Barrett Vahle (*pro hac vice forthcoming*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
*siegel@stuevesiegel.com*
*vahle@stuevesiegel.com*

James M. Treglio (SBN 228077)
**POTTER HANDY, LLP**
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 534-0530
*jimt@potterhandy.com*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN MAGLIOZZI, GERMAN RANGEL, and REBECCA FOX, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **Jury Trial Demanded** |
| CERNER CORPORATION D/B/A ORACLE HEALTH, and HUNTINGTON HEALTH, | |
| Defendants. | |

- 1 -

Christian Magliozzi, German Rangel, and Rebecca Fox, on behalf of themselves self and all similarly situated persons, alleges the following against Cerner Corporation d/b/a Oracle Health ("Oracle Health" or "Oracle") and Huntington Health Services, LLC, an affiliate of Cedars-Sinai. ("Huntington" and collectively with Oracle, "Defendants"), and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiffs make these allegations based upon personal knowledge of the facts pertaining to Plaintiffs and on information and belief as to all other matters derived from, among other things, investigation by counsel and review of public documents.

## NATURE OF THE ACTION

1.     This class action arises from Defendants' failure to protect highly sensitive date.

2.     Huntington is a healthcare provider based in California.[1]

3.     Plaintiff Christian Magliozzi is a patient of Huntington.

4.     Plaintiff German Rangel is a former patient of Huntington.

5.     Plaintiff Rebecca Fox is a former patient of Huntington.

6.     Huntington's "former electronic health record ('EHR') software vendor, Cerner" informed Huntington that on "March 15, 2025, . . . that an unauthorized third party gained access to legacy Cerner systems as early as January 22, 2025, and obtained certain data."

7.     On September 26, 2025, Oracle Health provided Huntington "with a list of patients whose information may have been involved in this incident"

8.     As such, Defendants store a litany of highly sensitive personal identifiable information ("PII") and protected health information ("PHI")—together "PII/PHI"—about their current and former patients. But Defendants lost control over

---

[1] HUNTINGTON HEALTH, https://www.huntingtonhealth.org/locations/ (last visited Nov. 6, 2025).

CLASS ACTION COMPLAINT

that data when cybercriminals infiltrated their insufficiently protected computer systems in the data breach.

9.    The types of PII/PHI exposed include "name, Social Security number, and information included within patient medical records, such as medical record numbers, doctors, diagnoses, medicines, test results, images, care and treatment."

10.    It is unknown for precisely how long the cybercriminals had access to Defendants' network before the breach was discovered. In other words, Defendants had no effective means to prevent, detect, stop, or mitigate breaches of their systems—thereby allowing cybercriminals unrestricted access to current and former patients' PII/PHI.

11.    On information and belief, cybercriminals were able to breach Defendants' systems because Defendants failed to adequately train their employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's PII/PHI. In short, Defendants' failures placed the Class's PII/PHI in a vulnerable position—rendering them easy targets for cybercriminals.

12.    Plaintiffs are data breach victims. They bring this class action on behalf of themselves, and all others harmed by Defendants' misconduct.

13.    The exposure of one's PII/PHI to cybercriminals is a bell that cannot be unrung. Before this data breach, Defendants' current and former patients' private information was exactly that—private. Now their private information is forever exposed and unsecured.

## PARTIES

14.    Plaintiff Christian Magliozzi is a natural person and a citizen of California. He is domiciled in California.

15.    Plaintiff German Rangel is a natural person and citizen of Arizona. He is domiciled in Arizona.

16.    Plaintiff Rebecca Fox is a natural person and a citizen of New York.

She is domiciled in New York.

17.    Defendant, Cerner Corporation d/b/a Oracle Health Inc., is a Delaware corporation with its principal place of business located at 8779 Hillcrest Road, Kansas City, MO 64138.[2]

18.    Defendant, Huntington Health Services, LLC, is an affiliate of Cedars-Sinai in California with its principal place of business at 9025 Wilshire Blvd, Suite 304, Beverly Hills, CA 90211.

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiff and Cerner Corporation d/b/a Oracle Health Inc. are citizens of different states. And there are over 100 putative Class Members.

20.    This Court has personal jurisdiction over Defendants because Huntington, based on information and belief, regularly conducts business in California, and both Defendants regularly conduct business in California, and have sufficient minimum contacts in California.

21.    Venue is proper in this Court because Huntington's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND

### Defendants Collected and Stored the PII/PHI of Plaintiff and the Class

22.    Huntington is a healthcare provider based in California.

23.    Huntington previously used Oracle Health (previously Cerner

---

[2] *Oracle Acquires Cerner to Form Oracle Health; The Future of Healthcare*, ORACLE, https://www.oracle.com/health/acquisition-of-cerner-the-future-of-healthcare/ (last visited Nov. 6, 2025).

Corporation) which is a third-party electronic health records vendor used by many healthcare providers.

24.    As part of their business, Defendants receive and maintain the PII/PHI of thousands of their current and former patients.

25.    In collecting and maintaining the PII/PHI, Defendants agreed it would safeguard the data in accordance with their internal policies, state law, and federal law. After all, Plaintiffs and Class Members themselves took reasonable steps to secure their PII/PHI.

26.    Under state and federal law, businesses like Defendants have duties to protect their current and former patients' PII/PHI and to notify them about breaches.

***Defendants' Data Breach***

27.    In March 2025, Huntington was informed by Oracle Health that "an unauthorized third party gained access to legacy Cerner systems as early as January 22, 2025, and obtained certain data."

28.    On September 26, 2025, Oracle Health provided Huntington with a "list of patients whose information may have been involved in this incident."

29.    As such, Defendants store a litany of highly sensitive personal identifiable information ("PII") and protected health information ("PHI")—together "PII/PHI"—about their current and former patients. But Defendants lost control over that data when cybercriminals infiltrated their insufficiently protected computer systems in the data breach.

30.    The types of PII/PHI exposed included "name, Social Security number, and information included within patient medical records, such as medical record numbers, doctors, diagnoses, medicines, test results, images, care and treatment."

31.    Currently, the precise number of persons injured is unclear. But the size of the putative class can be ascertained from information in Defendants' custody and control. And upon information and belief, the putative class is over one hundred

members—as it includes its current and former patients.

32.    And yet, Defendants waited until October 17, 2025, before it began notifying the class—a full 268 days after the data breach began.

33.    Thus, Defendants kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

34.    And when Defendants did notify Plaintiffs and the Class of the data breach, Defendants acknowledged that the data breach created a present, continuing, and significant risk of suffering identity theft, warning Plaintiffs and the Class: "We remind you it is always advisable to be vigilant for incidents of fraud or identity theft by reviewing your account statements and free credit reports for any unauthorized activity."

35.    Defendants failed their duties when their inadequate security practices caused the data breach. In other words, Defendants' negligence is evidenced by their failure to prevent the data breach and stop cybercriminals from accessing the PII/PHI. And thus, Defendants caused widespread injury and monetary damages.

36.    But such simple declarations are insufficient to ensure that Plaintiffs' and Class Members' PII/PHI will be protected from additional exposure in a subsequent data breach.

37.    Defendants have done little to remedy their data breach. True, Defendants have offered some victims credit monitoring and identity related services. But upon information and belief, such services are wholly insufficient to compensate Plaintiffs and Class Members for the injuries that Defendants inflicted upon them.

38.    Because of Defendants' data breach, the sensitive PII/PHI of Plaintiffs and Class Members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class Members.

39.    Plaintiffs Christian Magliozzi, German Rangel, and Rebecca Fox were

- 6 -

patients of Huntington. As a result, Defendants obtained and maintained Plaintiffs' PII/PHI.

40.    As a result, Plaintiffs were injured by Defendants' data breach.

*Plaintiff Christian Magliozzi*

41.    Plaintiff Christian Magliozzi is a patient of Huntington, one of Oracle's former healthcare provider clients, and received treatment from Huntington prior to the Data Breach. As a condition of receiving medical services, Plaintiff was required to provide his Personal Information to Defendants, including but not limited to his name, Social Security Number and medical information, in connection with Oracle's services contracted by his healthcare provider.

42.    Plaintiff typically takes measures to protect his Personal Information and is very careful about sharing his Personal Information. Plaintiff has never knowingly transmitted unsecured Personal Information over the internet or other unsecured source. He stores any documents containing his Personal Information in a safe and secure location, and diligently chooses unique usernames for his passwords and online accounts.

43.    In entrusting his Personal Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect his Private Information, including only contracting with third party vendors who would adequately protect his Private Information.

44.    Had Plaintiff known that Defendants did not utilize reasonable data security measures, he would not have entrusted his Personal Information to Defendants.

45.    At the time of the Data Breach, Oracle retained Plaintiff's Personal Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Personal Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

46.    Plaintiff received a Data Breach Notice on or around October 17, 2025, notifying him that his Private Information was improperly accessed by unauthorized third parties, including his name, Social Security Number, and information included within patient medical records, such as medical record numbers, doctors, diagnosis, medicines, test results, images, care and treatment.

47.    As a direct and proximate result of the Data Breach, Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Personal Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

48.    Plaintiff has been and will be forced to expend considerable time and effort including to monitor his accounts and credit files, changing his online account

passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect himself from identity theft and fraudulent misuse of his Personal Information, disclosed as a result of the Data Breach.

49. Indeed, Plaintiff's Personal Information that was compromised in the Data Breach has already been misused, evidenced by the significant increase in spam texts and phone calls using his Personal Information that he has received since the Data Breach.

50. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of his Personal Information, a form of intangible property that he entrusted to Defendants for the sole purpose of obtaining medical services.

51. Furthermore, Plaintiff has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of his Personal Information in the Data Breach. Plaintiff fears for his personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of his Personal Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

52. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as his Personal Information compromised in the Data Breach includes sensitive data that cannot be changed.

53.    Furthermore, Plaintiff's sensitive Personal Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

*Plaintiff German Rangel*

54.    Plaintiff German Rangel is a former patient of Huntington, one of Oracle's former healthcare provider clients, and received treatment from Huntington prior to the Data Breach. As a condition of receiving medical services, Plaintiff was required to provide his Personal Information to Defendants, including but not limited to his name, Social Security Number and medical information, in connection with Oracle's services contracted by his healthcare provider.

55.    Plaintiff typically takes measures to protect his Personal Information and is very careful about sharing his Personal Information. Plaintiff has never knowingly transmitted unsecured Personal Information over the internet or other unsecured source. He stores any documents containing his Personal Information in a safe and secure location, and diligently chooses unique usernames for his passwords and online accounts.

56.    In entrusting his Personal Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect his Private Information, including only contracting with third party vendors who would

CLASS ACTION COMPLAINT

adequately protect his Private Information.

57.    Had Plaintiff known that Defendants did not utilize reasonable data security measures, he would not have entrusted his Personal Information to Defendants.

58.    At the time of the Data Breach, Oracle retained Plaintiff's Personal Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Personal Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

59.    Plaintiff received a Data Breach Notice on or around October 17, 2025, notifying him that his Private Information was improperly accessed by unauthorized third parties, including his name, Social Security Number, and information included within patient medical records, such as medical record numbers, doctors, diagnosis, medicines, test results, images, care and treatment.

60.    As a direct and proximate result of the Data Breach, Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Personal Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

61.    Plaintiff has been and will be forced to expend considerable time and

CLASS ACTION COMPLAINT

effort including to monitor his accounts and credit files, changing his online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect himself from identity theft and fraudulent misuse of his Personal Information, disclosed as a result of the Data Breach.

62.     Indeed, Plaintiff's Personal Information that was compromised in the Data Breach has already been misused, evidenced by the significant increase in spam texts and phone calls using his Personal Information that he has received since the Data Breach.

63.     In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of his Personal Information, a form of intangible property that he entrusted to Defendants for the sole purpose of obtaining medical services.

64.     Furthermore, Plaintiff has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of his Personal Information in the Data Breach. Plaintiff fears for his personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of his Personal Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

65.     As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as his Personal Information compromised in the Data Breach includes sensitive

data that cannot be changed.

66.    Furthermore, Plaintiff's sensitive Personal Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

*Plaintiff Rebecca Fox*

67.    Plaintiff Rebecca D. Fox is citizen and resident of New York. She is a former patient of Huntington, one of Oracle's former healthcare provider clients, and she received treatment from Huntington prior to the Data Breach. As a condition of receiving medical services, Plaintiff was required to provide her Personal Information to Defendants, including but not limited to her name, Social Security Number and medical information, in connection with Oracle's services contracted by her healthcare provider.

68.    Plaintiff typically takes measures to protect her Personal Information and is very careful about sharing her Personal Information. Plaintiff has never knowingly transmitted unsecured Personal Information over the internet or other unsecured source. She stores any documents containing her Personal Information in a safe and secure location.

69.    In entrusting her Personal Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect her Private

Information, including only contracting with third party vendors who would adequately protect her Private Information.

70. Had Plaintiff known that Defendants did not utilize reasonable data security measures, she would not have entrusted her Personal Information to Defendants.

71. At the time of the Data Breach, Oracle retained Plaintiff's Personal Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Personal Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

72. Plaintiff received a Data Breach Notice on or around October 17, 2025, notifying her that her Private Information was improperly accessed by unauthorized third parties, including her name, Social Security number, and information included within patient medical records, such as medical record numbers, doctors, diagnoses, medicines, test results, images, care and treatment.

73. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Personal Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

74.    Plaintiff has been and will be forced to expend considerable time and effort including to monitor her accounts, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of her Personal Information, disclosed as a result of the Data Breach.

75.    In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Personal Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining medical services.

76.    As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as her Personal Information compromised in the Data Breach includes sensitive data that cannot be changed.

77.    Furthermore, Plaintiff's sensitive Personal Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

***Consumers Prioritize Data Security***

78.    In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[3] Therein, Cisco reported the following:

a.    "For the past six years, Cisco has been tracking consumer trends

---

[3] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited Nov. 6, 2025).

across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[4]

b.    89% of consumers stated that "I care about data privacy."[5]

c.    83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[6]

d.    51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[7]

e.    75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[8]

***Plaintiffs and the Proposed Class Face Significant Risk of Continued Identity Theft***

79.    Because of Defendants' failure to prevent the data breach, Plaintiffs and Class Members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a.    loss of loss of the opportunity to control how their PII/PHI is used;

b.    diminution in value of their PII/PHI;

c.    compromise and continuing publication of their PII/PHI;

d.    out-of-pocket costs from trying to prevent, detect, and recovery

---

[4] *Id.* at 3.
[5] *Id.* at 9.
[6] *Id.*
[7] *Id.*
[8] *Id.* at 11.

from identity theft and fraud;

e. lost opportunity costs and wages from spending time trying to mitigate the fallout of the data breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

f. delay in receipt of tax refund monies;

g. unauthorized use of their stolen PII/PHI; and

h. continued risk to their PII/PHI—which remains in Defendants' possession—and is thus as risk for futures breaches so long as Defendants fails to take appropriate measures to protect the PII/PHI.

80. Stolen PII/PHI is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII/PHI can be worth up to $1,000.00 depending on the type of information obtained.

81. The value of Plaintiffs and Class's PII/PHI on the black market is considerable. Stolen PII/PHI trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "Dark Web"—further exposing the information.

82. It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the PII/PHI far and wide.

83. One way that criminals profit from stolen PII/PHI is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining two sources of data— first the stolen PII/PHI, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

84. The development of "Fullz" packages means that the PII/PHI exposed

in the data breach can easily be linked to data of Plaintiffs and the Class that is available on the internet.

85.    In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII/PHI stolen by the cyber-criminals in the data breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class Members' stolen PII/PHI is being misused, and that such misuse is fairly traceable to the data breach.

86.    Defendants disclosed the PII/PHI of Plaintiffs and Class Members for criminals to use in the conduct of criminal activity. Specifically, Defendants opened up, disclosed, and exposed the PII/PHI of Plaintiffs and Class Members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII/PHI.

87.    Defendants' failure to promptly and properly notify Plaintiffs and Class Members of the data breach exacerbated Plaintiffs and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII/PHI and take other necessary steps to mitigate the harm caused by the data breach.

88.    Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

89.    In 2024, a record 3,158 data breaches occurred—exposing

approximately 1,350,835,988 sensitive records (i.e., 211% increase year over year).[9]

90.     Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[10]

91.     In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations have experienced cyberattacks.[11]

92.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendants' industry, including Defendant.

93.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendants—should use to protect against unlawful data exposure.

94.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[12] The FTC declared that, *inter alia*, businesses must:

---

[9] *2024 data breach Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2025), https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf (last visited Nov. 6, 2025)

[10] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited Nov. 6, 2025).

[11] *See* Maria Henriquez, *Iowa City Hospital Suffers Phishing Attack*, SECURITY MAGAZINE (Nov. 23, 2020), https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack (last visited Nov. 6, 2025).

[12] *Protecting Personal Information: A Guide for Business,* FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf

a.    protect the personal customer information that they keep;

b.    properly dispose of personal information that is no longer needed;

c.    encrypt information stored on computer networks;

d.    understand their network's vulnerabilities; and

e.    implement policies to correct security problems.

95.    The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

96.    Furthermore, the FTC explains that companies must:

a.    not maintain information longer than is needed to authorize a transaction;

b.    limit access to sensitive data;

c.    require complex passwords to be used on networks;

d.    use industry-tested methods for security;

e.    monitor for suspicious activity on the network; and

f.    verify that third-party service providers use reasonable security measures.

97.    The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

98.    In short, Defendants' failure to use reasonable and appropriate measures to protect against unauthorized access to their current and former patients' data

constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

**Defendants Failed to Follow Industry Standards**

99.    Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

100.    Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

101.    Upon information and belief, Defendants failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

102.    These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendants opened the door to the criminals—thereby causing the data breach.

**Defendants Violated HIPAA**

103.   HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly transactions and code sets to maintain the privacy and security of protected health information.[13]

104.   HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII/PHI and PHI is properly maintained.[14]

105.   The data breach itself resulted from a combination of inadequacies showing Defendants failed to comply with safeguards mandated by HIPAA. Defendants' security failures include, but are not limited to:

    a.    failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

    b.    failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

    c.    failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

    d.    failing to ensure compliance with HIPAA security standards by Defendants' workforce in violation of 45 C.F.R. § 164.306(a)(4);

---

[13] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[14] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

e.  failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.  failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.  failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h.  failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i.  failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

106.  Simply put, the data breach resulted from a combination of insufficiencies that demonstrate Defendants failed to comply with safeguards mandated by HIPAA regulations.

## CLASS ACTION ALLEGATIONS

107.  Plaintiffs bring this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose PII/PHI was compromised in the data breach that impacted Defendants in January 2025, including all those individuals who receive notice of the breach.

108. Excluded from the Class are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any Defendants' officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

109. Plaintiffs reserve the right to amend the class definition.

110. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of her claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

111. Ascertainability. All members of the proposed Class are readily ascertainable from information in Defendants' custody and control. After all, Defendants already identified some individuals and sent them data breach notices.

112. Numerosity. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least 100 members.

113. Typicality. Plaintiffs' claims are typical of Class Members' claims as each arises from the same data breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the data breach.

114. Adequacy. Plaintiffs will fairly and adequately protect the proposed Class's common interests. Her interests do not conflict with Class Members' interests. And Plaintiffs have retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

115.    <u>Commonality and Predominance</u>. Plaintiffs' and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

a.    if Defendants had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's PII/PHI;

b.    if Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the data breach;

c.    if Defendants were negligent in maintaining, protecting, and securing PII/PHI;

d.    if Defendants breached contract promises to safeguard Plaintiffs and the Class's PII/PHI;

e.    if Defendants took reasonable measures to determine the extent of the data breach after discovering it;

f.    if Defendants' Breach Notice was reasonable;

g.    if the data breach caused Plaintiffs and the Class injuries;

h.    what the proper damages measure is; and

i.    if Plaintiffs and the Class are entitled to damages, treble damages, and or injunctive relief.

116.    <u>Superiority.</u> A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendants would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their

injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

## FIRST CAUSE OF ACTION

### Negligence

### (On Behalf of Plaintiffs and the Class)

117. Plaintiffs restate the allegations in Paragraphs 1 through 116 above, as if fully set forth herein.

118. Plaintiffs and the Class (or their third-party agents) entrusted their PII/PHI to Defendants on the premise and with the understanding that Defendants would safeguard their PII/PHI, use their PII/PHI for business purposes only, and/or not disclose their PII/PHI to unauthorized third parties.

119. Defendants owed a duty of care to Plaintiffs and Class Members because it was foreseeable that Defendants' failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII/PHI in a data breach. And here, that foreseeable danger came to pass.

120. Defendants have full knowledge of the sensitivity of the PII/PHI and the types of harm that Plaintiffs and the Class could and would suffer if their PII/PHI was wrongfully disclosed.

121. Defendants owed these duties to Plaintiffs and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendants knew or should have known would suffer injury-in-fact from Defendants' inadequate security practices. After all, Defendants actively sought and obtained Plaintiff and Class Members' PII/PHI.

122.    Defendants also had a duty to exercise appropriate clearinghouse practices to remove PII/PHI it was no longer required to retain under applicable regulations.

123.    Defendants knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII/PHI of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiffs and the Class, even if the harm occurred through the criminal acts of a third party.

124.    Defendants also had a duty to exercise appropriate clearinghouse practices to remove PII/PHI it was no longer required to retain under applicable regulations.

125.    Defendants knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII/PHI of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiffs and the Class, even if the harm occurred through the criminal acts of a third party.

126.    Defendants' duty to use reasonable security measures arose because of the special relationship that existed between Defendants and Plaintiffs and the Class. That special relationship arose because Plaintiffs and the Class (or their third-party agents) entrusted Defendants with their confidential PII/PHI, a necessary part of obtaining services from Defendant.

127.    Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiffs and Class Members' PII/PHI.

128.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII/PHI entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants' duty to protect

Plaintiff and the Class Members' sensitive PII/PHI.

129.  Defendants violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII/PHI and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII/PHI Defendants had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

130.  Similarly, under HIPAA, Defendants had a duty to follow HIPAA standards for privacy and security practices—as to protect Plaintiff's and Class Members' PHI.

131.  Defendants violated their duties under HIPAA by failing to use reasonable measures to protect PHI and by not complying with applicable regulations detailed supra. Here too, Defendants' conduct was particularly unreasonable given the nature and amount of PHI that Defendants collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

132.  The risk that unauthorized persons would attempt to gain access to the PII/PHI and misuse it was foreseeable. Given that Defendants hold vast amounts of PII/PHI, it was inevitable that unauthorized individuals would attempt to access Defendants' databases containing the PII/PHI —whether by malware or otherwise.

133.  PII/PHI is highly valuable, and Defendants knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII/PHI of Plaintiffs and Class Members' and the importance of exercising reasonable care in handling it.

134.  Defendants improperly and inadequately safeguarded the PII/PHI of

CLASS ACTION COMPLAINT

Plaintiffs and the Class in deviation of standard industry rules, regulations, and practices at the time of the data breach.

135.    Defendants breached these duties as evidenced by the data breach.

136.    Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' and Class Members' PII/PHI by:

      a.    disclosing and providing access to this information to third parties and

      b.    failing to properly supervise both the way the PII/PHI was stored, used, and exchanged, and those in their employ who were responsible for making that happen.

137.    Defendants breached their duties by failing to exercise reasonable care in supervising their agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII/PHI of Plaintiffs and Class Members which actually and proximately caused the data breach and Plaintiffs and Class Members' injury.

138.    Defendants further breached their duties by failing to provide reasonably timely notice of the data breach to Plaintiffs and Class Members, which actually and proximately caused and exacerbated the harm from the data breach and Plaintiffs and Class Members' injuries-in-fact.

139.    Defendants have admitted that the PII/PHI of Plaintiffs and the Class was wrongfully lost and disclosed to unauthorized third persons because of the data breach.

140.    As a direct and traceable result of Defendants' negligence and/or negligent supervision, Plaintiffs and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

141.    Defendants' breach of their common-law duties to exercise reasonable

care and their failures and negligence actually and proximately caused Plaintiffs and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII/PHI by criminals, improper disclosure of their PII/PHI, lost benefit of their bargain, lost value of their PII/PHI, and lost time and money incurred to mitigate and remediate the effects of the data breach that resulted from and were caused by Defendants' negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**<u>SECOND CAUSE OF ACTION</u>**

**Breach of Implied Contract**

**(On Behalf of Plaintiffs and the Class)**

142.    Plaintiffs restate the allegations in Paragraphs 1 through 116 above, as if fully set forth herein.

143.    Plaintiffs and Class Members either directly contracted with Defendants or Plaintiffs and Class Members were the third-party beneficiaries of contracts with Defendant.

144.    Plaintiffs and Class Members (or their third-party agents) were required to provide their PII/PHI to Defendants as a condition of receiving services provided by Defendant. Plaintiffs and Class Members (or their third-party agents) provided their PII/PHI to Defendants or their third-party agents in exchange for Defendants' services.

145.    Plaintiffs and Class Members (or their third-party agents) reasonably understood that a portion of the funds they paid would be used to pay for adequate cybersecurity measures.

146.    Plaintiffs and Class Members (or their third-party agents) reasonably understood that Defendants would use adequate cybersecurity measures to protect the PII/PHI that they were required to provide based on Defendants' duties under state and federal law and their internal policies.

147.   Plaintiffs and the Class Members (or their third-party agents) accepted Defendants' offers by disclosing their PII/PHI to Defendants or their third-party agents in exchange for services.

148.   In turn, and through internal policies, Defendants agreed to protect and not disclose the PII/PHI to unauthorized persons.

149.   Implicit in the parties' agreement was that Defendants would provide Plaintiffs and Class Members (or their third-party agents) with prompt and adequate notice of all unauthorized access and/or theft of their PII/PHI.

150.   After all, Plaintiffs and Class Members (or their third-party agents) would not have entrusted their PII/PHI to Defendants (or their third-party agents) in the absence of such an agreement with Defendant.

151.   Plaintiffs and the Class (or their third-party agents) fully performed their obligations under the implied contracts with Defendant.

152.   The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

153.   Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

154.   Defendants materially breached the contracts it entered with Plaintiffs and Class Members (or their third-party agents) by:

      a.    failing to safeguard their information;

      b.    failing to notify them promptly of the intrusion into their

computer systems that compromised such information.

c.    failing to comply with industry standards;

d.    failing to comply with the legal obligations necessarily incorporated into the agreements; and

e.    failing to ensure the confidentiality and integrity of the electronic PII/PHI that Defendants created, received, maintained, and transmitted.

155.    In these and other ways, Defendants violated their duty of good faith and fair dealing.

156.    Defendants' material breaches were the direct and proximate cause of Plaintiffs' and Class Members' injuries (as detailed supra).

157.    Plaintiffs and Class Members (or their third-party agents) performed as required under the relevant agreements, or such performance was waived by Defendants' conduct.

## THIRD CAUSE OF ACTION

### Invasion of Privacy

### (On Behalf of Plaintiffs and the Class)

158.    Plaintiffs restate the allegations in Paragraphs 1 through 116 above, as if fully set forth herein.

159.    Plaintiffs and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII/PHI and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

160.    Defendants owed a duty to their current and former patients, including Plaintiffs and the Class, to keep this information confidential.

161.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiffs and Class Members' PII/PHI is highly offensive to a reasonable person.

162.   The intrusion was into a place or thing which was private and entitled to be private. Plaintiffs and the Class (or their third-party agents) disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiffs and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

163.   The data breach constitutes an intentional interference with Plaintiffs' and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

164.   Defendants acted with a knowing state of mind when they permitted the data breach because they knew their information security practices were inadequate.

165.   Defendants acted with a knowing state of mind when it failed to notify Plaintiffs and the Class in a timely fashion about the data breach, thereby materially impairing their mitigation efforts.

166.   Acting with knowledge, Defendants had notice and knew that their inadequate cybersecurity practices would cause injury to Plaintiffs and the Class.

167.   As a proximate result of Defendants' acts and omissions, the private and sensitive PII/PHI of Plaintiffs and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiffs and the Class to suffer damages (as detailed supra).

168.   Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and the Class since their PII/PHI are still maintained by Defendants with their inadequate cybersecurity system and policies.

169.   Plaintiffs and the Class have no adequate remedy at law for the injuries

relating to Defendants' continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendants' inability to safeguard the PII/PHI of Plaintiffs and the Class.

170. In addition to injunctive relief, Plaintiffs, on behalf of themselves and the other Class Members, also seeks compensatory damages for Defendants' invasion of privacy, which includes

171. the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

### (On Behalf of Plaintiffs and the Class)

172. Plaintiffs restates the allegations in Paragraphs 1 through 116 above, as if fully set forth herein.

173. This claim is pleaded in the alternative to the breach of implied contract claim.

174. Plaintiffs and Class Members (or their third-party agents) conferred a benefit upon Defendant. After all, Defendants benefitted from (1) using their PII/PHI to provide service, and (2) accepting payment.

175. Defendants appreciated or had knowledge of the benefits it received from Plaintiff and Class Members.

176. Plaintiffs and Class Members (or their third-party agents) reasonably understood that Defendants would use adequate cybersecurity measures to protect the PII/PHI that they were required to provide based on Defendants' duties under state and federal law and their internal policies.

177. Defendants enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiffs' and Class Members'

PII/PHI.

178.   Instead of providing a reasonable level of security, or retention policies, that would have prevented the data breach, Defendants instead calculated to avoid their data security obligations at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide the requisite security.

179.   Under principles of equity and good conscience, Defendants should not be permitted to retain the full value of Plaintiffs' and Class Members' (1) PII/PHI and (2) payment because Defendants failed to adequately protect their PII/PHI.

180.   Plaintiffs and Class Members have no adequate remedy at law.

181.   Defendants should be compelled to disgorge into a common fund—for the benefit of Plaintiffs and Class Members—all unlawful or inequitable proceeds that it received because of their misconduct.

## FIFTH CAUSE OF ACTION

### Breach of Fiduciary Duty

### (On Behalf of Plaintiffs and the Class)

182.   Plaintiffs restates the allegations in Paragraphs 1 through 116 above, as if fully set forth herein.

183.   Given the relationship between Defendants and Plaintiffs and Class Members, where Defendants became guardian of Plaintiffs' and Class Members' PII/PHI, Defendants became a fiduciary by their undertaking and guardianship of the PII/PHI, to act primarily for Plaintiffs and Class Members, (1) for the safeguarding of Plaintiffs and Class Members' PII/PHI; (2) to timely notify Plaintiffs and Class Members of a data breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendants did and do store.

184.   Defendants have a fiduciary duty to act for the benefit of Plaintiffs and

Class Members upon matters within the scope of Defendants' relationship with them—especially to secure their PII/PHI.

185.    Because of the highly sensitive nature of the PII/PHI, Plaintiffs and Class Members (or their third-party agents) would not have entrusted Defendant, or anyone in Defendants' position, to retain their PII/PHI had they known the reality of Defendants' inadequate data security practices.

186.    Defendants breached their fiduciary duties to Plaintiffs and Class Members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class Members' PII/PHI.

187.    Defendants also breached their fiduciary duties to Plaintiffs and Class Members by failing to diligently discover, investigate, and give notice of the data breach in a reasonable and practicable period.

188.    As a direct and proximate result of Defendants' breach of their fiduciary duties, Plaintiffs and Class Members have suffered and will continue to suffer numerous injuries (as detailed supra).

## SIXTH CAUSE OF ACTION

### Violation of the California Consumer Privacy Act,

### Cal. Bus. & Prof. Code §§ 1798.150, *et seq.* ("CCPA")

### (On behalf of the California Subclass)

189.    Plaintiffs restate the allegations in Paragraphs 1 through 116 above, as if fully set forth herein.

190.    Defendants violated California Civil Code § 1798.150 of the CCPA by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the nonencrypted Private Information of Plaintiffs and the California Subclass. As a direct and proximate result, Plaintiffs' and the California Subclass' nonencrypted and nonredacted Private Information was subject to unauthorized access and exfiltration, theft, or disclosure.

191.   Defendants are "businesses" under the meaning of Civil Code § 1798.140 because Defendants are "corporation[s], association[s], or other legal entit[ies] that [are] organized or operated for the profit or financial benefit of [their] shareholders or other owners" that "collect consumers' personal information" and are active "in the State of California" and "had annual gross revenues in excess of twenty-five million dollars ($25,000,000) in the preceding calendar year." Civil Code § 1798.140(d).

192.   Plaintiffs and the California Subclass seek injunctive or other equitable relief to ensure Defendants hereinafter adequately safeguard Private Information by implementing reasonable security procedures and practices. Such relief is particularly important because Defendants continue to hold Private Information, including Plaintiffs' and the California Subclass's Private Information. Plaintiff and the California Subclass have an interest in ensuring that their Private Information is reasonably protected, and Defendants have demonstrated a pattern of failing to adequately safeguard this information.

193.   On November 7, 2025, Defendants were sent written notice of their violations pursuant to Cal. Civ. Code § 1798.150 by Plaintiff Magliozzi.

194.   As described herein, an actual controversy has arisen and now exists as to whether Defendants implemented and maintained reasonable security procedures and practices appropriate to the nature of the information so as to protect the personal information under the CCPA.

195.   A judicial determination of this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Defendants.

## SEVENTH CAUSE OF ACTION

**Violation of the California Confidentiality of Medical Information Act,**

**Cal. Civ. Code §§ 56, *et seq.* ("CMIA")**

**(On behalf of the California Subclass)**

196.   Plaintiffs restate the allegations in Paragraphs 1 through 116 above, as if fully set forth herein.

197.   Under California's Confidentiality of Medical Information Act ("CMIA"), "persons receiving health care services have a right to expect that the confidentiality of individual identifiable medical information derived by health service providers be reasonably preserved . . . [and it] is the intention of the Legislature in enacting this act, to provide for the confidentiality of individually identifiable medical information, while permitting certain reasonable and limited uses of that information. Cal. Civ. Code Div. 1, Pt. 2.6.

198.   Furthermore, "[e]very provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein." Cal. Civ. Code § 56.101(a).

199.   And "[a]ny provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided[.]" Cal. Civ. Code § 56.101(a).

200.   Thus, "an individual may bring an action against a person or entity who has negligently released confidential information or records concerning him or her[.]" Cal. Civ. Code § 56.36(b).

201.   Here, Defendants are subject to the CMIA because Defendants provide health care, and Defendants created, maintained, preserved, stored, abandoned, destroyed, and/or disposed of medical information regarding Plaintiff and the California Subclass.

202.   Defendants were negligent because they failed to take reasonable precautions to ensure their data systems were protected. As a result of Defendants'

negligence, an unauthorized third-party viewed and obtained Plaintiff's medical information.

203.   As such, Defendants are liable for damages in an amount to be determined at trial, but not less than the statutorily provided nominal damages of $1,000 for each class member.

## EIGHTH CAUSE OF ACTION

### Violation of the California Customer Records Act,

### Cal. Civ. Code §§ 1798.80, *et seq.*

### (On behalf of the California Subclass)

204.   Plaintiffs restate the allegations in Paragraphs 1 through 116 above, as if fully set forth herein.

205.   Under the California Customer Records Act, any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" must "disclose any breach of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82. The disclosure must "be made in the most expedient time possible and without unreasonable delay" but disclosure must occur "immediately following discovery [of the breach], if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." *Id.* (emphasis added).

206.   The data breach constitutes a "breach of the security system" of Defendants.

207.   An unauthorized person acquired Plaintiffs' and the California Subclass's personal unencrypted information.

208.   Defendants failed to provide legally compliant notice under § 1798.82(d) to Plaintiffs and Subclass Members. On information and belief, to date,

Defendant Oracle Health has not sent written notice of the data breach to all impacted individuals. As a result, Defendant has violated § 1798.82 by not providing legally compliant and timely notice to all Subclass Members.

209. Defendants' unreasonable delay prevented Plaintiffs and Subclass Members from taking appropriate measures to protect themselves against harm.

210. Because Plaintiffs and the Subclass Members were unable to protect themselves, they suffered incrementally increased damages that they would not have suffered with timelier notice.

211. Plaintiffs and the Subclass Members are entitled to equitable relief and damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### Violation of the California Unfair Competition Law,

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

### (On behalf of the California Subclass)

212. Plaintiffs restate the allegations in Paragraphs 1 through 116 above, as if fully set forth herein.

213. Defendants engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.* which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

214. Defendants' conduct is unlawful because it violates the California Consumer Privacy Act of 2018, Civ. Code § 1798.100, *et seq.* (the "CCPA"); California's Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq.,* and other state data security laws.

215. Defendants stored Plaintiffs' and the California Subclass's Private Information in their computer systems and knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with applicable regulations and that would have kept Plaintiffs' and the

Subclass's Private Information secure so as to prevent the loss or misuse of that Private Information.

216.   Defendants failed to disclose to Plaintiffs and the Subclass that their Private Information was not secure. However, Plaintiffs and the Subclass were entitled to assume, and did assume, that Defendants had secured their Private Information. At no time were Plaintiffs or the Subclass on notice that their Private Information was not secure, which Defendants had a duty to disclose.

217.   Defendants also violated Cal. Civ. Code § 1798.150 by failing to implement and maintain reasonable security procedures and practices, resulting in an unauthorized access and exfiltration, theft, or disclosure of Plaintiffs' and the Subclass's nonencrypted and nonredacted Private Information.

218.   Had Defendants complied with these requirements, Plaintiffs and the California Subclass would not have suffered damages related to the data breach.

219.   Defendants' conduct was unlawful in that it violated the CCPA.

220.   Defendants' acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, *inter alia*, Section 5(a) of the Federal Trade Commission Act.

221.   Defendants' conduct was also unfair, in that it violated a clear legislative policy in favor of protecting consumers from data breaches.

222.   Defendants' conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. This conduct includes employing unreasonable and inadequate data security despite their business model of actively collecting Private Information.

223.   Defendants also engaged in unfair business practices under the "tethering test." Their actions and omissions, as described above, violated fundamental public policies expressed by the California Legislature. *See, e.g.*, Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right

of privacy in information pertaining to them . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendants' acts and omissions thus amount to a violation of the law.

224.   Instead, Defendants made Plaintiffs' and the California Subclass' Private Information accessible to scammers, identity thieves, and other malicious actors, subjecting Plaintiffs and the Class to an impending risk of identity theft. Additionally, Defendants' conduct was unfair under the UCL because it violated the policies underlying the laws set out in the prior paragraph. 205. As a result of those unlawful and unfair business practices, Plaintiffs and the Class suffered an injury-in-fact and have lost money or property.

225.   The injuries to Plaintiffs and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

226.   There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misconduct alleged in this complaint.

227.   Therefore, Plaintiffs and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendants; disgorgement of all profits accruing to Defendants because of their unfair business practices; a permanent injunction enjoining Defendants' unlawful and unfair business activities; and any other equitable relief the Court deems proper.

## TENTH CAUSE OF ACTION

### Violation of the California Privacy Rights Act,

### Cal. Civ. Code §§ 1798.100 *et seq.*

**(On Behalf of Plaintiffs and the Class)**

228.    Plaintiffs restate the allegations in Paragraphs 1 through 116 above, as if fully set forth herein.

229.    The CPRA expands upon the CCPA and imposes enhanced data protection obligations on businesses, including the requirement to provide notice, implement heightened security measures, and limit data retention.

230.    Defendants failed to comply with these enhanced obligations, including but not limited to: (a) inadequate transparency regarding their data collection, storage, and use practices; (b) retaining personal information longer than necessary; and (c) failing to limit use and disclosure of sensitive personal data.

231.    As a result of Defendants' non-compliance as outlined above, Plaintiff's and the Class's personal information were compromised.

232.    Plaintiff seeks available statutory remedies, including but not limited to statutory and actual damages, injunctive relief, and attorney's fees and costs.

## ELEVENTH CAUSE OF ACTION

### Declaratory Judgment

**(On Behalf of Plaintiffs and the Class)**

233.    Plaintiffs restate the allegations in Paragraphs 1 through 116 above, as if fully set forth herein.

234.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

235.    In the fallout of the data breach, an actual controversy has arisen about Defendants' various duties to use reasonable data security. On information and belief, Plaintiffs allege that Defendants' actions were—and still are—inadequate and

unreasonable. And Plaintiffs and Class Members continue to suffer injury from the ongoing threat of fraud and identity theft.

236. Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

> a. Defendants owed—and continues to owe—a legal duty to use reasonable data security to secure the data entrusted to it;
>
> b. Defendants have a duty to notify impacted individuals of the data breach under the common law and Section 5 of the FTC Act;
>
> c. Defendants breached, and continue to breach, their duties by failing to use reasonable measures to the data entrusted to it; and
>
> d. Defendants breaches of their duties caused—and continue to cause—injuries to Plaintiffs and Class Members.

237. The Court should also issue corresponding injunctive relief requiring Defendants to use adequate security consistent with industry standards to protect the data entrusted to it.

238. If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendants experience a second data breach.

239. And if a second breach occurs, Plaintiffs and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages— while warranted for out-of-pocket damages and other legally quantifiable and provable damages— cannot cover the full extent of Plaintiffs and Class Members' injuries.

240. If an injunction is not issued, the resulting hardship to Plaintiffs and Class Members far exceeds the minimal hardship that Defendants could experience if an injunction is issued.

241. An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiffs, Class Members, and the public at large.

## PRAYER FOR RELIEF

Plaintiffs and Class Members respectfully request judgment against Defendants and that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiffs and the proposed Class, appointing Plaintiffs as class representative, and appointing her counsel to represent the Class;

B.    Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiffs and the Class;

C.    Awarding injunctive relief as necessary to protect the interests of Plaintiffs and the Class;

D.    Enjoining Defendants from further unfair and/or deceptive practices;

E.    Awarding Plaintiffs and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.    Awarding restitution and damages to Plaintiffs and the Class in an amount to be determined at trial;

G.    Awarding attorneys' fees and costs, as allowed by law;

H.    Awarding prejudgment and post-judgment interest, as provided by law;

I.    Granting Plaintiffs and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.    Granting other relief that this Court finds appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

DATED: November 7, 2025                Respectfully submitted,

                                       **COTCHETT PITRE & McCARTHY LLP**


                                       _/s/ Thomas E. Loeser_
                                       Thomas E. Loeser (SBN 202724)
                                       2715 Ocean Park Blvd
                                       Suite 3088
                                       Santa Monica, CA 90405
                                       Telephone: 310-392-2008
                                       tloeser@cpmlegal.com

                                       **STUEVE SIEGEL HANSON LLP**
                                       Norman E. Siegel – Mo. Bar No. 44378
                                       (_pro hac vice forthcoming_)
                                       Barrett J. Vahle – Mo. Bar No. 56674
                                       (_pro hac vice forthcoming_)
                                       460 Nichols Road, Suite 200
                                       Kansas City, Missouri 64112
                                       Telephone: 816-714-7100
                                       siegel@stuevesiegel.com
                                       vahle@stuevesiegel.com

                                       James M. Treglio (SBN 228077)
                                       **POTTER HANDY, LLP**
                                       100 Pine Street, Suite 1250
                                       San Francisco, CA 94111
                                       Telephone: (415) 534-0530
                                       jimt@potterhandy.com

                                       _Attorneys for Plaintiffs and the Putative Class_

CLASS ACTION COMPLAINT